IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

RODNEY HOWARD                                                                 PLAINTIFF

v.                        NO. 2:17-cv-00071 PSH

NANCY A. BERRYHILL, Acting Commissioner                                       DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Howard ("Howard") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon the findings of an Administrative Law Judge ("ALJ").

Howard maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and primarily offers three reasons why.[1] Howard first maintains that his residual functional capacity was erroneously assessed because the ALJ's credibility determination was flawed. It is Howard's position that the medical evidence and his limited daily activities support his credibility and demonstrate that he cannot "perform the demands of full-time light work on a sustained basis." See Docket Entry 11 at 11.

---

[1]   The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of assessing the claimant's residual functional capacity, the ALJ is required to evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by considering the medical evidence and evidence of the claimant's "daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

Howard was born on December 14, 1952, and was fifty-two years old on May 5, 2005, i.e., the day he allegedly became disabled. The record reflects, and the ALJ could and did find, that Howard last met the insured status requirements of the Social Security Act on December 31, 2006. The Commissioner maintains, and the Court finds, that the relevant period in this case is therefore from May 5, 2005, through December 31, 2006.

Howard filed an application for disability insurance benefits on June 17, 2013. In the application, he alleged that he had become disabled as a result of impairments that included gout, arthritis, obesity, and the partial amputation of his right index finger.

Howard has ably summarized the medical evidence during the relevant period. Because the medical evidence is not extensive, the Court will reproduce large portions of his summary.

Howard has a twenty percent service-connected disability rating from the United States Department of Veterans Affairs ("VA"). See Transcript at 376. Ten percent of the rating is for the loss of an index finger, and ten percent of the rating is for hypertensive vascular disease.

On March 22, 2005, Howard was seen at a VA hospital for hypertension. See Transcript at 370-374. The progress note reflects that he weighed 187 pounds and had a Body Mass Index ("BMI") of 25.8. His glucose and liver functioning were elevated. A physical examination revealed, in part, a full thyroid with a possible nodule on the right side. His extremities showed no evidence of clubbing, cyanosis, or edema. He reported smoking one pack of cigarettes a day and having done so for the past thirty years. Howard was diagnosed with hypertension controlled by medication, hyperglycemia, and tachycardia consistent with hypothyroidism. He was prescribed propranolol, was encouraged to stop smoking, and counseled about the benefits of diet and exercise.

On March 24, 2005, VA officials notified Howard that earlier testing of his thyroid revealed suppressed levels of a thyroid-stimulating hormone. See Transcript at 369. He was prescribed medication for the condition.

On April 27, 2005, Howard was seen again at a VA hospital for impairments that included hyperthyroidism, hyperglycemia, and hypertension. See Transcript at 365-368. The progress note reflects that he weighed 205 pounds and had a BMI of 32.2. A physical examination was consistent with hyperthyroidism and revealed, inter alia, a goiter. He also continued to show suppressed levels of a thyroid-stimulating hormone. He was continued on medications that included propranolol, HCTZ/Triamterene, Lisinopril, and Methlimazole. He was again encouraged to stop smoking.

3

On May 3, 2006, Howard was seen at a VA hospital for follow-up of his hypertension and hyperthyroidism. See Transcript at 360-364. He reported that he had run out of his medications three months earlier but otherwise had no complaints. The progress note reflects that he weighed 200 pounds and had a BMI of 31.4. He was again diagnosed with hyperthyroidism, hypertension, and hyperglycemia. He was restarted on medications that included propranolol and was again counseled about the benefits of diet and exercise.

On June 27, 2006, Howard was seen at a VA hospital for complaints of pain and swelling in his left knee and calf. See Transcript at 354-359. The progress notes reflects that he had been experiencing pain and swelling for approximately five days. He also reported having had episodes of "left knee 'tightness' in the past." See Transcript at 354. A physical examination revealed, inter alia, a diffusely swollen left knee with warmth and erythema, moderate tenderness, and decreased mobility. His weight was unchanged. Acute gout was diagnosed, and he was prescribed medication. The knee joint was also aspirated.

Howard offers additional medical evidence from outside the relevant time period that he believes sheds light on his work-related limitations during the period. Specifically, he represents the following:

> On February 21, 2013, Howard underwent a physical examination for continued VA disability benefits. The healthcare provider indicated that Howard suffers from hypertension which was initially diagnosed in the 1980s and has been on medications ever since. His medication included Lisinopril and Carvedilol. He had a history of Afib (irregular heartbeat) and a history of congestive heart failure thought to be due to Afib with RVR (rapid ventricular response). It was noted that Howard was "less likely able to perform strenuous physical exertion if BP markedly elevated." (Tr. 437-39).

4

> Howard is also diagnosed with arthritis of the knee and/or lower leg which began in 1993. Flare-ups were caused by standing too long and cold weather. Range of motion testing caused pain at … 120 degrees bilaterally. Contributing factors of disability included less movement than normal, pain on movement, and swelling. Imaging tests documented degenerative or traumatic arthritis in both knees and it was noted that Howard's ability to work was impacted "only for very physically demanding occupations." (Tr. 430-35).

See Docket Entry 11 at CM/ECF 5.

Howard completed a series of documents in connection with his application for disability insurance benefits. See Transcript at 255-262, 263-264, 265-272. He represented in a pain report that during the relevant period, he experienced sharp pains in left leg and knee caused by arthritis. He experienced the pain two to four times a day for several minutes at a time. The pain was caused by walking, standing, and exercising. He could walk about one to two city blocks before he had to stop and rest.

Howard represented in a function report that during the relevant period, he could not stand or walk for long periods of time, could not bend his knees, and became short of breath when he climbed stairs. He described a typical day as follows: "take medication, eat food, shower, [and] watch [television]." See Transcript at 265. He could attend to his personal care, prepare simple meals, perform routine house and yard work, and shop for groceries. Howard was able to go outside and did so approximately five to ten times a day. He spent time with others and attended church on a regular basis. His impairments limited his ability to stand, kneel, and climb stairs. He could walk about one to three city blocks before he had to stop and rest, and he could resume walking after about five to ten minutes of rest. He used crutches, a walker, and a wheelchair in the past, noting that he used them after he broke his leg.

5

Howard testified during the second administrative hearing. See Transcript at 53-64.[2] He was asked why he could not work during the relevant period. He stated that he could not work because of knee problems and problems caused by cardiomyopathy and an overactive thyroid. He could not remain on his feet for more than two to four hours before requiring five to ten minutes of rest. His heart problem caused shortness of breath. During the relevant period, Howard lived with a friend and the friend's teenage son. The friend was a carpenter, and Howard assisted the friend at various job sites for a couple of hours on different days. Howard testified that the work involved the following: "carried lumber, you know, some light lumbar, did a lot of nailing and measuring, and all that kind of stuff." See Transcript at 60. Howard occasionally fished but sat in a chair along the bank when he did so.

The ALJ found at step two of the sequential evaluation process that Howard had severe impairments in the form of gout, osteoarthritis, and obesity. The ALJ assessed Howard's residual functional capacity and found that he had the ability to do light work, specifically, he could lift, push, and/or pull ten pounds frequently with a maximum weight of twenty pounds and could sit, stand, and/or walk for six hours in an eight-hour workday. In so finding, the ALJ considered the medical evidence and Howard's subjective complaints in accordance with Social Security Ruling 96-7p, the factors of which largely mirror the factors of Polaski v. Heckler. With specific regard to Howard's obesity, the ALJ found the following:

---

[2] Howard also testified during the initial administrative hearing. See Transcript at 29-45. His testimony at that hearing is consistent with his testimony at the second administrative hearing. Following the initial administrative hearing, an ALJ found that Howard was not disabled for purposes of the Social Security Act, see Transcript at 92-97, and Howard appealed. The Appeals Council granted his request for review and remanded the case. See Transcript at 101-104. The Appeals Council ordered the ALJ to give additional consideration to Howard's VA disability rating and his obesity.

> ... the medical evidence reveals [Howard] has dealt with weight issues on a longitudinal basis. The medical record reveals [he] is 62 inches tall and weighs 194 pounds with a BMI of 36.7. [Footnote omitted]. ... Moreover, medical signs and laboratory findings reveal the presence of arthralgias, elevated lipid profile levels, high blood pressure readings, which confirm complications associated with obesity such as hypertension, hyperlipidemia, and osteoarthritis. ... Obesity is a medically determinable impairment and it is properly considered when evaluating disability. The [ALJ] has considered the combined effects of obesity with [Howard's] other impairments. In this case, [Howard's] obesity, along with his other impairments, has not eroded his occupational base to the point that he is disabled.

See Transcript at 18. With specific regard to Howard's subjective complaints, the ALJ found the following:

> [Howard] alleges disabling symptoms and limitations from gout, osteoarthritis, and obesity affect his ability to stand, walk, climb stairs, and kneel. ... [He] described his pain as severe, chronic, and localized in his left leg and knees. ... He contends his pain as constant, in both duration and intensity, and subdued only by medication, which causes drowsiness. ... [He] reports exercising, walking, and standing as principal aggravators. ... Additionally, [Howard] testified to experiencing a daily cycle of insomnia and fatigue that interferes with many of his activities and necessitates daily naps. ... [He] is able to complete basic household tasks, but takes frequent breaks as needed. ...
>
> ...
>
> The undersigned also notes that there are inconsistencies between [Howard's] allegations and the evidence of record. For example, while [he] reported the inability to walk or perform strenuous activity, he testified to helping a carpenter friend on job sites on a part time basis. ... While such evidence is not solely conclusive, it indicates [his] daily activities have, at least at times, been somewhat greater than [he] has generally reported.

See Transcript at 17-19. The ALJ found that although Howard could not have performed his past work, there were other jobs a hypothetical individual of his age, education, work experience, and residual functional capacity could have performed.

7

Substantial evidence on the record as a whole supports the ALJ's credibility determination. The Court so finds for two reasons. First, the ALJ adequately considered the medical evidence. Although Howard had severe impairments during the relevant period, their impact on his work-related abilities was not greater than the ALJ found. For instance, Howard's hypertension, hyperthyroidism, and hyperglycemia were amenable to medication. Without question, he struggled with his weight. His BMI was as high as 36.7.[3] There is no indication, though, that his obesity, alone or in combination with his other impairments, prevented him from performing light work. The medical evidence in that regard is unremarkable. The progress note from Howard's June 27, 2006, presentation to a VA hospital is illustrative. He presented complaining of pain and swelling in his left knee and calf, pain and swelling he had been experiencing for approximately five days. A physical examination revealed a diffusely swollen left knee with warmth and erythema, moderate tenderness, and decreased mobility. Acute gout was diagnosed. He was prescribed medication, and his knee joint was aspirated. The episode was resolved, and he sought no additional treatment.

Second, the ALJ adequately considered the non-medical evidence. It is true that the ALJ's analysis of the evidence was not exhaustive, but it was not required to be. See Goff v. Barnhart, 421 F.3d 785 (8th Cir. 2005) (ALJ need not explicitly discuss each Polaski v. Heckler factor). It is sufficient if the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. See Id. The Court is satisfied that the ALJ did so in this instance.

---

[3] The Court accepts the ALJ's finding that Howard is sixty-two inches tall. See Transcript at 18. There is evidence in the record to suggest that he is taller. See Transcript at 372 (seventy-one and one-half inches tall), 367 (sixty-seven inches tall), 357 (sixty-seven inches tall).

8

The evidence relevant to the Polaski v. Heckler factors is not compelling. Howard's daily activities were limited to attending to his personal care, preparing simple meals, performing routine house and yard work, and shopping for groceries. He represented in a function report that a typical day involved taking medication, eating, showering, and watching television. There appears to be no sound explanation for such a limitation of his daily activities. It is possible that the limitation was due, at least in part, to a lifestyle choice. The ALJ properly noted Howard's use of medication, which was conservative at best. The ALJ could and did find that the medication helped control Howard's impairments, particularly his hypertension. The ALJ also properly noted that Howard's pain was aggravated by standing, walking, and exercising. The ALJ could and did note, though, that Howard assisted a friend who was working as a carpenter, and Howard was capable of performing some work-related activities while doing so. Howard testified that he "carried lumber, you know, some light lumbar, did a lot of nailing and measuring, and all that kind of stuff." See Transcript at 60.

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, Howard has not offered a sound reason for deviating from that rule. The evaluation of his credibility is one of the acceptable evaluations of all the evidence and will not be disturbed.

Howard offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Howard maintains that his obesity imposes significant limitations on his ability to work, and the ALJ's use of the Medical-Vocational Guidelines ("Guidelines") at step five was improper.

9

At step five, the ALJ is required to determine whether there is work a hypothetical individual with the claimant's limitations could perform. In making the determination, the Guidelines should not be used if the claimant suffers from non-exertional impairments that diminish or significantly limit his residual functional capacity; instead, the ALJ is required to obtain vocational expert testimony. See Brock v. Asture, 674 F.3d 1062 (8th Cir. 2012) (because ALJ found claimant suffered from severe mental impairments, vocational expert testimony should have been obtained). If, though, the claimant's non-exertional impairments do not diminish or significantly limit his residual functional capacity to perform the full range of Guideline-listed activities, use of the Guidelines is not error.

The record reflects that Dwight Turner ("Turner"), a vocational expert, testified during the second administrative hearing. See Transcript at 65-67. Turner testified that there was work a hypothetical individual with Howard's limitations could perform. The ALJ did not rely upon Turner's testimony. Instead, the ALJ relied upon the Guidelines. The ALJ erred in using the Guidelines because Howard has non-exertional impairments that diminished or significantly limited his residual functional capacity to perform the full range of Guideline-listed activities. A remand is not warranted, though, because the record contains evidence to support the ALJ's ultimate finding.

Turner testified that a hypothetical individual with Howard's limitations could work as a plumbing hardware assembler or a bench press operator. Turner's testimony supports the ALJ's ultimate finding at step five, and the ALJ could and did find that there was work a hypothetical individual with Howard's limitations could have performed. The error committed by the ALJ was therefore harmless.

Howard alternatively maintains that Turner's testimony cannot be relied upon because it was in response to improperly phrased hypothetical questions. Specifically, Howard maintains that the ALJ failed to include any mention of Howard's obesity in the hypothetical questions.

Testimony from a vocational expert is substantial evidence on the record as a whole when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." See Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). The hypothetical question must include all the impairments that are substantially supported by the record as a whole. See Id.

Substantial evidence on the record as a whole supports the ALJ's hypothetical questions, and the ALJ could have relied upon Turner's testimony. The questions captured the concrete consequences of Howard's deficiencies. It is true that the questions did not specifically mention Howard's obesity, but the ALJ's failure to include any mention of it does not warrant a remand. Substantial evidence on the record as a whole establishes that Howard's weight did not give rise to work-related limitations greater than the ALJ found, and substantial evidence on the record as a whole establishes that Howard's weight did not adversely impact his other impairments.

Howard maintains that Morrison v. Apfel, 146 F.3d 625 (8th Cir. 1998), requires the ALJ to specifically include the claimant's obesity in formulating a hypothetical question. Although there are instances in which obesity must be included in such a question, those instances are limited to ones in which obesity is identified as a "major medical issue." See Burnett v. Colvin, 2014 WL 5795788 at 2 (E.D.Ark. 2014) (Kearney, J.). Here, there is no evidence that Howard's obesity is a major medical issue.

Howard last maintains that the ALJ erred by the manner in which he developed the record. It is Howard's position that the ALJ should have "developed the record regarding Howard's medical condition in 2006 before concluding that Howard was not disabled." See Docket Entry 11 at CM/ECF 12.

The ALJ has an obligation to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining whether the ALJ fully developed the record; the determination is made on a case by case basis. See Id. It involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010).

At the commencement of the second administrative hearing, the ALJ asked Howard's attorney whether there were "any additions that need to be made to the existing record, or do you have any objections." See Transcript at 52. Howard's attorney represented that he had no additions or objections. At the conclusion of the hearing, the ALJ asked Howard's attorney whether there was "any other business we need to take care of in ... Howard's claim this morning." See Transcript at 67. Howard's attorney represented that there was no other business requiring the ALJ's attention.

The Court has examined the record to determine whether it contains sufficient information for the ALJ to have made an informed decision. Although trying to assess a claimant's residual functional capacity more than ten years after the fact is admittedly difficult, the Court is satisfied that the record contains sufficient information. It contains medical findings regarding the nature and severity of Howard's impairments during the relevant period. It is not clear what additional records might show or how they would cause the ALJ to make substantially different findings.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Howard's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 17th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE